■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RODNEY BLUNT, Appellant.—Judgment, Supreme Court, Bronx County (Bernard Fried, J., at trial with a jury), rendered May 21, 1987, convicting defendant of attempted murder in the second degree and sentencing him to an indeterminate term of imprisonment of 8⅓ to 25 years, unanimously affirmed.

Defendant, who was a police officer, met Jacqueline Brown, a prostitute, in a fast-food restaurant early in the morning of December 17, 1984.

Defendant invited Brown back to his apartment where they both fell asleep while watching the television. Brown awakened first, and before defendant showed her out of the apartment, she took from the jewelry box two rings that she later bartered for bags of cocaine.

About a week later, on December 22 or 23, defendant found Brown on the street. He handcuffed her, forced her into his car, and after picking up an unidentified friend, took Brown to a supermarket parking lot where she was physically abused.

After the friend left, Brown was taken to an unidentified swimming pool area and subjected to more physical abuse and degradation. The torture ended when Brown claimed that she had pawn tickets for the rings. Defendant warned her that if he did not get the rings he would not hesitate to kill her because he had killed people before. After bundling Brown into his trunk, defendant drove to Robert Lawrence's home where Brown claimed she had left the pawn tickets.

There, defendant identified himself as a police officer and claimed that Brown was connected with a homicide and had left a pawn ticket for stolen property in the apartment. After an unsuccessful search for the pawn tickets, defendant drove to the supermarket parking lot. He then called for other officers and placed Brown under arrest in connection with the theft of the rings.

About a month later, on January 29, 1985, defendant observed Brown at Lawrence's apartment building and accosted her outside his door on the third-floor hallway. In the course of arguing over Brown's failure to appear in court in response to the charges regarding her theft of the rings, defendant attempted to handcuff Brown, claiming to have a warrant. Brown shrank from defendant, who pushed her and fired several shots at her. Defendant fled and Brown made her way

down the stairs to the lobby, where she again encountered defendant, who fired his gun once more, striking Brown in the head. When the police arrived, they found one spent round in the lobby and two in the third-floor hallway.

We find no merit to defendant's claim that he was deprived of a fair trial because the trial court submitted the events of December 22 or 23 into evidence, or more specifically, Brown's testimony of defendant's claim that he had killed other people. The court admitted the proof on the theory that it was relevant to the jury's understanding of the events that occurred on January 29.

We conclude that the evidence was probative. It established that the shooting was the result of defendant's frustration at the failure of his earlier effort to secure the return of his rings. Undoubtedly, the case could have been tried differently, but in the final analysis the probativeness of the evidence is not outweighed by its prejudicial impact. *(Cf., People v Ventimiglia,* 52 NY2d 350, 359-360.) There is no formula for determining when a particular uncharged crime may be admitted into evidence *(People v Santarelli,* 49 NY2d 241, 248), but under these circumstances defendant's earlier conduct was probative of his intent on January 29. It is also pertinent that defendant's claim of justification raised a factual issue that the People had to address, and the proof of defendant's rising anger was particularly relevant to defendant's assertion that he, an athletic policeman, was in fear of Brown who weighed 90 pounds.

Defendant's claim that Brown should not have been permitted to testify that he had stated that he had killed in the past has not been preserved, and we therefore decline to reach it. Were we to consider it, in the interest of justice, we would nevertheless affirm. Not all parts of a conversation are inextricably woven together *(People v Ventimiglia, supra,* at 361), but defendant's claim that he had killed before was admissible as it was further evidence of the physical abuse and threats defendant imposed on Brown during the course of the incident of December 22 or 23 and was an integral component of the narrative of those events.

Moreover, any error can be deemed harmless. Brown's account of the shooting was corroborated by the testimony of the neighbors and the forensic evidence. Brown testified that she was shot several times on the third floor and once, in the head, in the lobby. The police recovered two spent shells on the third floor and one in the lobby. Two of the three neigh-

bors who testified remembered multiple shots, followed by banging or noise, and then a final, single shot. Concur—Sullivan, J P., Ross, Ellerin, Wallach and Smith, JJ.